RAMIREZ, J.
Norma R. Broin, et al. (flight attendants) petition for certiorari review of an order disqualifying their attorneys in this case. We quash the trial court order because it departs from the essential requirements of law.
This appeal arises from a 1991 class action brought by numerous flight attendants against several tobacco companies. See Ramos v. Philip Morris Cos., 748 So.2d 24 (Fla. 3d DCA 1999); Broin v. Philip Morris Cos., 641 So.2d 888 (Fla. 3d DCA 1994). The class was defined as “[a]ll non-smoking flight attendants who are or have been employed by airlines based in the United States and are suffering from diseases and disorders caused by their exposure to second hand cigarette smoke in airline cabins.” The trial court was to try the case in two stages. The first stage would decide the common questions, chiefly causation. In the second stage, individual trials would determine each plaintiffs damages.
During the first stage trial, the parties entered into a settlement agreement. In return for the flight attendants’ waiver of their intentional tort and punitive damages claims, the defendant tobacco companies inter alia agreed to “establish a $300 million settlement fund to endow a foundation to sponsor scientific research for early detection and cure of diseases of flight attendants caused by cigarette smoke, which will be managed and directed by a board *1109 of trustees and governed by a trust instrument.” Ramos, 743 So.2d at 27. The trial court approved the settlement, “retaining] continuing jurisdiction in connection with the formation, management and direction of the [foundation].” This Court affirmed the trial court’s approval of the settlement in Ramos. Thereafter, the Flight Attendant Medical Research Institute (FAMRI) was formed, with several of the original Broin action flight attendants becoming members of FAMRI’s board.
Subsequently, numerous flight attendants filed their stage two individual actions for compensation. In the process, counsel for these flight attendants, including Steven Hunter and Philip Gerson, became concerned that FAMRI’s activities were unsupervised by the court. Accordingly, they requested an accounting from the foundation. FAMRI was unresponsive, and the flight attendants, through their counsel, petitioned the trial court for enforcement of the settlement. In particular, the flight attendants requested an accounting of FAMRI’s funds, an injunction against further expenditures, and an order directing distribution of the settlement funds to the flight attendants.
FAMRI and two flight attendant board members objected to this petition and moved to disqualify counsel for petitioners on the ground of conflicts of interest. The objectors argued that, because they were now challenging the foundation formed in accordance with a settlement agreed to by all class members, counsel for petitioners have in essence switched sides. In supporting affidavits, the objectors alleged that all plaintiffs’ counsel worked closely together and jointly were considered their attorneys in the original action regardless of individual representations. Mr. Gerson and Mr. Hunter denied currently representing any of the objectors, and, either denied former representation or alleged that upon learning of their objections, they withdrew from representation of the objecting clients.
After a hearing, at which the trial court considered the motion, responses, affidavits, legal argument and proffers of witness testimony, the trial court entered an order disqualifying all attorneys for the petitioners. Mr. Gerson and Mr. Hunter’s clients seek certiorari review of this order.[1] Accordingly, we must determine if the trial court departed from the essential requirements of law in disqualifying petitioners’ attorneys.
First, we recognize that disqualification of counsel strikes at a significant right, that of a party to choose his or her own lawyer, and that often motions for disqualification are filed for tactical purposes. Because it is such a harsh and drastic remedy, it should be resorted to sparingly. Coral Reef of Key Biscayne Developers, Inc. v. Lloyd’s Underwriters at London, 911 So.2d 155, 157 (Fla. 3d DCA2005).
Respondents contend that petitioners’ attorneys have a conflict of interest with current and former clients, and should be disqualified pursuant to Florida Rules of Professional Conduct 4-1.7 and 4-1.9. We turn first to Rule 4-1.7 which prohibits a lawyer from representing a client if: “(1) the representation of 1 client will be directly adverse to another client; or (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer’s responsibilities to another client, a former client or a third person or by a personal interest *1110 of the lawyer.” The comments to this rule clarify that “a lawyer ordinarily may not act as advocate against a person the lawyer represents in some matter, even if it is wholly unrelated.” For current clients the rules “do[] not require that matters be substantially related” to create a conflict. Florida Bar v. Dunagan, 731 So.2d 1237, 1240 n. 3 (Fla.1999).
As the Fifth District pointed out in Harvey E. Morse, P.A. v. Clark, 890 So.2d 496, 498 (Fla. 5th DCA 2004), a much stricter disqualification standard is imposed for a current client than a former client. The court discussed the reason for this difference:
The existing client rule is based on the ethical-concept requirement that a lawyer should act with undivided loyalty for his client and not place himself or herself in a position where a conflicting interest may affect the obligations of an ongoing professional relationship. It is difficult to imagine how a lawyer could appear in court one day arguing vigorously for a client, and then face the same client the next day and vigorously oppose him in another matter, without seriously damaging their professional relationship. Such unseemly conduct, if permitted, would further erode the public’s regard for the legal profession.
Id. (footnote omitted). Accordingly, under this rule a conflict exists if the attorney in representing one client must directly contend against or materially limit his advocacy on behalf of another client even if this occurs in unrelated matters. All that the party seeking disqualification must prove is that an attorney-client relationship exists. Lincoln Assocs. & Const., Inc. v. Wentworth Const. Co., Inc., 26 So.3d 638 (Fla. 1st DCA 2010). Further, the court examines the circumstances from the client’s perspective in deciding whether an attorney-client relationship exists. United States v. Abbell, 900 F.Supp. 449, 452 (S.D.Fla.1995).
If a rule 4-1.7 conflict arises “after representation has been undertaken, the lawyer should withdraw from the representation.” Rule 4-1.7. cmt.; see also, R. Regulating Fla. Bar 4 — 1.16(a)(1) (“[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if ... the representation will result in violation of the Rules of Professional Conduct or law_”). Afterward, whether the lawyer may continue to represent the other client is determined according to Rule 4-1.9.
 Rule 4-1.9 governs conflicts with former clients and states that “[a] lawyer who has formerly represented a client in a matter shall not thereafter ... represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client gives informed consent.” Accordingly, a party seeking disqualification under this rule must show that “(1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the [lawyer] subsequently represented the interest adverse to the former client [is] the same or substantially related to the matter in which it represented the former client.” State Farm Mut. Auto. Ins. Co. v. K.A.W., 575 So.2d 630, 633 (Fla.1991). “Whether two legal matters are substantially related depends upon the specific facts of each particular situation or transaction.” Dunagan, 731 So.2d at 1240. As the comments to Rule 4-1.9 state, “Matters are ‘substantially related’ for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer *1111 attacking work that the lawyer performed for the former client.”
Because of inevitable tension between large numbers of class members, class action litigation often leads to conflicts of interest. See, e.g., Geoffrey P. Miller, Conflicts of Interest in Class Action Litigation: An Inquiry Into the Appropriate Standard, 2003 U. Chi. Legal F. 581 (2003). A common dilemma arises when class counsel endeavor to reach a settlement which is fair to all members, and some of the members object to the proposed settlement. See generally, Piambino v. Bailey, 757 F.2d 1112, 1143-46 (11th Cir.1985); Grosso v. Fid. Nat’l Title Ins. Co., 983 So.2d 1165 (Fla. 3d DCA 2008).
We find persuasive[2] the discussion of the United States Court of Appeals for the Third Circuit in Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 589 (3d Cir.1999):
In many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class). If, by applying the usual rules on attorney-client relations, class counsel could easily be disqualified in these cases, not only would the objectors enjoy great “leverage,” but many fair and reasonable settlements would be undermined by the need to find substitute counsel after months or even years of fruitful settlement negotiations. “Moreover, the conflict rules do not appear to be drafted with class action procedures in mind and may be at odds with the policies underlying the class action rules.” Bruce A. Green, Conflicts of Interest in Litigation: The Judicial Role, 65 Fordham L.Rev. 71, 127 (1996).
In light of these concerns, the court fashioned a balancing test:
[I]n the class action context, once some class representatives object to a settlement negotiated on their behalf, class counsel may continue to represent the remaining class representatives and the class, as long as the interest of the class in continued representation by experienced counsel is not outweighed by the actual prejudice to the objectors of being opposed by their former counsel.
Id. at 590.
The need to balance the traditional rules of loyalty to a client, duties to the court, and duties to the class as a whole, calls for adaptation of the traditional conflict model. As noted by the United States Court of Appeals for the Second Circuit, these apparent conflicts between multiple clients in a class do not require a court to jettison entirely an attorney for the class. This is because “the attorney for the class is normally allowed to oppose the contentions of class members who have appeared in court in opposition to a proposed settlement of the class action, although technically the Code of Professional Responsibility would seem to prohibit his doing so.” In re Agent Orange Prod. Liab. Litig., 800 F.2d 14, 19 (2d Cir.1986) (citations omitted).
The mere appearance or possibility of conflict is not enough in this context, because class actions present unique considerations, particularly once the issue involves counsel’s role in approval or administration of a settlement under the court’s auspices. See id. Rather, as one California court noted, differing views regarding class certification or settlement are submitted to the court for its consideration of the class’ interests, not an individual *1112 client’s, which means differences of opinion between attorneys and class members are not automatically preclusive of the attorney’s continued service as counsel. See Kullar v. Foot Locker Retail, Inc., 191 Cal.App.4th 1201, 121 Cal.Rptr.3d 353, 358 (2011). The duty of counsel appointed by the trial court to administer a settlement is to ensure the best interests of the class, not an individual client. See In re Holocaust Victim Assets Litig., 2007 WL 805768, *42 (E.D.N.Y. Mar.15, 2007).
This case demonstrates why Florida’s Rules of Professional Conduct alone are inadequate to resolve conflict of interest problems typical to class action cases. Here, two class members, who object to a course of action approved by a significant number of their co-class members, demand the disqualification of counsel selected by the latter to represent them. The sole basis for disqualification is the alleged team effort of all plaintiffs’ counsel in the original action.
Here, Rule 4-1.7 does not apply because there is no evidence that Mr. Gerson and Mr. Hunter currently represent the respondents. Regarding Rule 4-1.9, except for one flight attendant, from whom they withdrew representation upon notice of the client’s objection, there is also no evidence that Mr. Gerson and Mr. Hunter personally represented the respondents. Respondents would have us impute an attorney-client relationship from the attorneys’ limited involvement in the litigation of the original action. Such an imputation would necessarily be warranted in all class actions where, although one attorney or a team of attorneys generally head the litigation for the class, others may from time to time collaborate or monitor the proceedings on behalf of individual clients. As the Lazy Oil court concluded, the threat of disqualifying their opponent’s counsel would give a minority great leverage in any dispute which may arise among class members.
The federal courts’ approach affords a better method for determining when to disqualify an attorney for conflict of interest in the context of a class action. This approach balances a party’s right to select his or her own counsel against a client’s right to the undivided loyalty of his or her counsel. Accordingly, we conclude that, before disqualifying a class member’s attorney on the motion of another class member, the court should balance the actual prejudice to the objector with his or her opponent’s interest in continued representation by experienced counsel. The trial court here did not engage in the balancing approach.
Here, petitioners’ right to be represented by experienced counsel of their choice is outweighed by any prejudice to the respondents. Mr. Gerson and Mr. Hunter are familiar with the history of this litigation, have demonstrated their ability to effectively advocate for their clients, and seek to provide greater benefits to all class members. Conversely, prejudice to the respondents is minimal. Mr. Gerson and Mr. Hunter were not lead counsel in the original action. Thus, their limited interaction with the respondents and their counsel would have resulted in little access to confidential information. Moreover, although arising from the prior litigation, the present action involves a different issue. Petitioners are not asking that the court undo the prior settlement, rather they are requesting that the court determine whether the foundation created under the settlement is functioning as originally intended.
For these reasons, we find that the trial court departed from the essential requirements of law in disqualifying petitioners’ counsel, quash the order of disqualification, and remand to the trial court for *1113 further proceedings in accordance with this opinion.
Petitions granted.

. “[Cjertiorari is the proper method to obtain review of a disqualification order because denying a party counsel of his or her choice is a material injury without appellate remedy.” Event Firm, LLC v. Augustin, 985 So.2d 1174, 1175 (Fla. 3d DCA 2008).

. Federal courts apply professional conduct rules similar to those which govern lawyers practicing in state courts. See Lazy Oil, 166 F.3d at 589; Woods v. Covington Cnty. Bank, 537 F.2d 804, 810 (5th Cir.1976); Rentclub, Inc. v. Transamerica Rental Fin. Corp., 811 F.Supp. 651, 654 (M.D.Fla.1992).