# Supreme Court of Florida

_____

No. SC12-988

_____

**PATRICIA YOUNG, et al.**,
Petitioners,

vs.

**NORVA L. ACHENBAUCH, et al.**,
Respondents.

[March 27, 2014]

POLSTON, C.J.

Petitioners, Patricia Young, Alani Blissard, and the Flight Attendant Medical Research Institute (FAMRI), argue that the Third District Court of Appeal in Broin v. Phillip Morris Cos., Inc., 84 So. 3d 1107 (Fla. 3d DCA 2012), erred in quashing the trial court's order disqualifying several attorneys, including Steven Hunter and Philip Gerson, from representing a group of flight attendants in a suit against FAMRI. Specifically, the petitioners claim that the Third District failed to apply the Florida Rules of Professional Conduct in determining whether the trial court

abused its discretion by disqualifying the attorneys in the underlying case.[1] For the reasons that follow, we quash the Third District's decision in Broin and reinstate the trial court's disqualification order.[2] Additionally, with this opinion, we ask The Florida Bar to investigate whether any Florida Rules of Professional Conduct were violated during the underlying proceedings or during the presentation of this case to this Court.

## I. BACKGROUND

In 1991, flight attendants, who were suffering from diseases caused by exposure to second-hand smoke in airline cabins, initiated a class action suit against several tobacco companies. See Ramos v. Philip Morris Cos., Inc., 743 So. 2d 24 (Fla. 3d DCA 1999), rev. dismissed, 743 So. 2d 14 (Fla. 1999); Broin v. Philip Morris Cos., Inc., 641 So. 2d 888 (Fla. 3d DCA 1994). The class action resulted in a settlement agreement, whereby the class members agreed to waive their intentional tort and punitive damages claims but retained the right to individually pursue claims for compensatory damages against the tobacco companies. See Ramos, 743 So. 2d at 27. In return, the tobacco companies agreed

1. We have jurisdiction based on express and direct conflict. See art. V, § 3(b)(3), Fla. Const.

2. The trial court's order actually disqualified all seven attorneys for the petitioners in the suit against FAMRI. However, only attorneys Hunter and Gerson challenged their disqualification in the Third District. Therefore, this opinion will only address the disqualification of Hunter and Gerson.

to waive the statute of limitations defense and to establish a $300 million settlement fund to be used solely to establish a foundation which would be charged with sponsoring scientific research for the early detection and cure of diseases associated with cigarette smoking. Id. at 27, 31-32. The settlement agreement provided that if the settlement is modified in any way by the court "then this [s]ettlement [a]greement shall be canceled and terminated, and shall become null and void, and the parties shall be restored to their original positions." The Third District affirmed the trial court's approval of the settlement without modification in Ramos. See Philip Morris v. French, 897 So. 2d 480, 482-83 (Fla. 3d DCA 2004) (explaining that the trial court approved the class action settlement agreement "without modification" and that the Third District affirmed the trial court's decision in Ramos), rev. denied, 918 So. 2d 292 (Fla. 2005). Subsequently, FAMRI was formed, and several of the flight attendants who were part of the Broin class action became members of FAMRI's board, including two of the petitioners in this case, Young and Blissard. Additionally, pursuant to the settlement agreement, the Broin class action was dismissed with prejudice in 1998.

Thereafter, many of the flight attendants who had been part of the class action filed their individual suits as contemplated by the settlement agreement for compensatory damages against the tobacco companies, including Young and Blissard. Steven Hunter and Philip Gerson were among the group of attorneys

who represented some of the flight attendants in their individual progeny suits. According to Hunter and Gerson, while representing their flight attendant clients in the individual suits, Hunter and Gerson became concerned that FAMRI's activities were not being supervised by the trial court and attempted to have FAMRI produce an accounting, but FAMRI was allegedly unresponsive. And, in December 2010, a group of attorneys, including Gerson and Hunter, filed a petition against FAMRI, on behalf of a handful of the flight attendants who were part of the original Broin class, seeking an accounting of FAMRI's funds, an injunction against further expenditures, and requesting that the settlement funds be dispersed directly to their clients.

Young and Blissard, who both remain board members of FAMRI, as well as FAMRI, moved to disqualify counsel for the petitioners in the action against FAMRI on the ground of conflict of interest. In support of this motion, they submitted several sworn affidavits setting forth their objections, which will be discussed in turn below.

Specifically, Blissard averred in her affidavit that she was a former class representative in the Broin class action and is a current member of FAMRI's board, and that Steven Hunter represented her in her individual progeny suit for ten years. Blissard further explained that during that time she attended numerous meetings with the various flight attendants' counsel, including Hunter and Gerson,

and that the flight attendants' counsel worked as a team in the pursuit of the individual flight attendants' claims, and that she trusted the group of attorneys as her legal team. Further, Blissard stated that during this time she shared many confidences about herself and FAMRI and that Hunter "always stressed the united team effort of his colleagues." Additionally, Blissard stated that Hunter had asked her to request funds from FAMRI's board to help cover the litigation costs and judgments in the individual flight attendant cases, but FAMRI denied the request after consulting with its counsel because it could not legally authorize such expenditures. Upon learning of the petition against FAMRI, Blissard explained that she contacted Hunter and objected to the petition and that Hunter subsequently withdrew as her counsel in her individual suit after representing her for a decade.

Similarly, Young submitted an affidavit in which she explained that she was a former class representative in the Broin class action and is also a member of FAMRI's board. Like Blissard, Young averred that over the years she frequently met with the group of attorneys representing the flight attendants in their individual progeny suits, including Hunter and Gerson, and that she considered all of the attorneys in the group to be her counsel, but admitted that neither Hunter nor Gerson was her individual counsel of record. Young also stated that she shared confidential information regarding FAMRI with Hunter and Gerson and that they "asked [her] many questions about the criteria FAMRI used to fund research, the

peer-review process, and whether their experts could bypass peer review." In fact, similar to Blissard, Young also stated that Gerson and Hunter asked her to request funds from FAMRI to cover the litigation costs in the individual flight attendant cases, a request which she conveyed to FAMRI's board, but the board denied the request because it could not legally authorize such an expenditure.

Additionally, two other affidavits were submitted from Hunter and Gerson's clients in support of disqualification. An affidavit from Olivia Chambers explained that Hunter was her attorney in her individual progeny suit, and that in February 2011 (after the petition against FAMRI had already been filed) she received a letter from Hunter asking her to authorize him to proceed on her behalf in the suit against FAMRI. Chambers stated that she objected to the action against FAMRI and, as a result, Hunter withdrew as her counsel in her individual suit. Likewise, an affidavit submitted by Raiti Waerness, one of Gerson's clients, explained that she learned of the petition against FAMRI and wrote Gerson objecting to any action against FAMRI, and that Gerson subsequently withdrew as her counsel in her individual suit in 2011. The petitioners also submitted an exhibit in the form of an e-mail from Peggy Spurgeon in which she wrote to Gerson in April 2010 stating that she also opposed his pursuit of the suit against FAMRI.

In addition to the affidavits from Hunter and Gerson's clients in support of disqualification, one of the attorneys who was a part of the group of attorneys working on the flight attendants' progeny cases submitted an affidavit stating that all of the flight attendants' counsel employed a team approach to the progeny lawsuits—"work[ing] on the cases jointly, sharing information, discovery, and trial strategy," and freely exchanged information about each case among the group. This attorney also averred that Young and Blissard met frequently with the group and "freely provided information and confided in us about FARMI [sic] and their work with FAMRI." The attorney also stated that during this time he had permitted one of the attorneys who joined with Gerson and Hunter in filing the petition against FAMRI to review all of his flight attendant case files.

In response to the motion to disqualify, Hunter and Gerson submitted affidavits in which they denied the existence of any conflict. Specifically, Hunter admitted that he had been Blissard and Chamber's counsel in their individual progeny suits, but that there was no conflict in his representing the petitioners against FAMRI because he had promptly withdrawn as Blissard and Chamber's counsel upon learning of their objections to the suit. Additionally, Hunter denied ever representing Young or possessing any confidential information about Young or Blissard's dealings with FAMRI.

Similarly, Gerson denied that an attorney-client relationship existed with Blissard or Young, stating that they never disclosed any information about themselves, their cases, the operations of FAMRI, or their roles in FAMRI to him. He further denied ever asking Young about the possibility of FAMRI funding the individual litigation cost, and stated that "there never was any information not publicly available about FAMRI or its board members activities that was ever provided to [him]." Finally, Gerson admitted that he had filed Raiti Waerness' individual suit for her, but only at the request of the Broin class counsel because the statute of limitations was due to expire, that he had never met her, and had not heard from her until he received the letter in which she objected to any action against FAMRI. And Gerson explained that upon learning of her objections, he filed a motion to withdraw as her counsel and officially set the hearing on that motion when he learned that she had filed an affidavit in support of his disqualification. Gerson further averred that he "never received any information about [Waerness] during the time [he] was attorney of record." With regard to Peggy Spurgeon, Gerson averred that, although he filed an action on her behalf, he did so only as a courtesy to Broin class counsel. He explained that an attorney-client relationship never existed, that he never met her, that he did not possess any information about her, that she never completed the retainer agreement he sent her, and that her case was dismissed for lack of prosecution in 2008.

In June 2011, a hearing was held on the motion to disqualify, and the trial court offered the parties the opportunity to proffer evidence and give testimony, but neither party presented any witnesses. After reviewing all of the affidavits, arguments, and exhibits, the trial court entered an order disqualifying all of the attorneys for the petitioners in the action against FAMRI. The trial court found that the attorneys had violated Florida's Rule of Professional Conduct 4-1.7, governing conflicts with current clients, and Rule of Professional Conduct 4-1.9, governing conflicts with former clients. The trial court explained that withdrawing from the representation of Young, Blissard, and Waerness appeared to be an attempt to "drop one client 'like a hot potato' in order to treat it as though it were a former client for the purpose of resolving a conflict of interest dispute." (quoting ValuePart, Inc. v. Clements, No. 06C2709, 2006 WL 2252541, at *2 (N.D. Ill. Aug. 2, 2006)).

On certiorari review, the Third District quashed the trial court's disqualification order. Broin, 84 So. 3d at 1108. The Third District noted that "[a] common dilemma arises when class counsel endeavor to reach a settlement which is fair to all members, and some of the members object to the proposed settlement." Id. at 1111. Then, the Third District went on to state that "[t]his case demonstrates why Florida's Rules of Professional Conduct alone are inadequate to resolve conflict of interest problems typical to class action cases[:]"

> Here, two class members, who object to a course of action approved by a significant number of their co-class members, demand the disqualification of counsel selected by the latter to represent them. The sole basis for disqualification is the alleged team effort of all plaintiffs' counsel in the original action.

Id. at 1112.

The Third District ultimately concluded that the federal approach, which "balances a party's right to select his or her own counsel against a client's right to the undivided loyalty of his or her counsel," "affords a better method for determining when to disqualify an attorney for conflict of interest in the context of a class action." Id. Therefore, the Third District held that "before disqualifying a class member's attorney on the motion of another class member, the court should balance the actual prejudice to the objector with his or her opponent's interest in continued representation by experienced counsel." Id.

Based on this balancing test, the Third District found that the other class members' right to be represented by Gerson and Hunter was outweighed by any prejudice to the objectors. Id. The Third District explained that Gerson and Hunter are familiar with the litigation history and, because they were not lead counsel in the original class action, they would have had "little access to confidential information." Id. Furthermore, the Third District stated that, "although arising from the prior litigation, the present action involves a different issue." Id. Accordingly, the Third District held that "the trial court departed from

the essential requirements of law in disqualifying petitioners' counsel" and quashed the disqualification order and remanded for further proceedings. Id. at 1112-13.

As explained below, we quash the Third District's decision because it failed to apply the Florida Rules of Professional Conduct to determine whether disqualification was warranted. We also reinstate the trial court's disqualification order.[3]

## II.  ANALYSIS

We have previously explained that the Florida Rules of Professional Conduct provide the standard for determining whether counsel should be disqualified in a given case. State Farm Mut. Auto. Ins. Co. v. K.A.W., 575 So. 2d 630, 633 (Fla. 1991); see also Estright v. Bay Point Improvement Ass'n, Inc., 921 So. 2d 810, 811 (Fla. 1st DCA 2006) ("An order involving the disqualification of counsel must be tested against the standards imposed by the [Florida] Rules of Professional Conduct.") (quoting Morse v. Clark, 890 So. 2d 496, 497 (Fla. 5th DCA 2004)).  In this case, the Third District's review below should have been limited to whether the trial court abused its discretion in granting the disqualification motion. See Applied Digital Solutions, Inc. v. Vasa, 941 So. 2d

---

3. This case involves the interpretation and application of this Court's Rules of Professional Conduct, which is a pure legal issue subject to de novo review. See State Farm Mut. Auto. Ins. Co. v. K.A.W., 575 So. 2d 630 (Fla. 1991).

404, 408 (Fla. 4th DCA 2006) ("The standard of review for orders entered on motions to disqualify counsel is that of an abuse of discretion. While the trial court's discretion is limited by the applicable legal principles, the appellate court will not substitute its judgment for the trial court's express or implied findings of fact which are supported by competent substantial evidence.") (citation omitted). However, instead of just applying the Florida Rules of Professional Conduct to determine whether the trial court abused its discretion in disqualifying the attorneys, the Third District adopted a different test, namely a balancing test used by the federal courts. Broin, 84 So. 3d at 1112. However, as explained above, this is not the proper test for motions to disqualify counsel as set forth by this Court, and the Third District lacked the constitutional authority to adopt a new test. Art. V, § 15, Fla. Const.

Furthermore, we find that the trial court did not abuse its discretion when ruling that counsel violated Florida Rules of Professional Conduct 4-1.7 and 4-1.9. Rule 4-1.7 concerns conflicts of interests with current clients and provides that a lawyer shall not represent a client if:

> (1) the representation of 1 client will be directly adverse to another client; or
> (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

R. Regulating Fla. Bar 4-1.7(a). However, notwithstanding a conflict under rule 4-1.7(a), a lawyer might still be able to represent the clients provided that the representation is not prohibited by law, the lawyer reasonably believes the representation will not adversely affect his responsibilities to the other client, and the other client consents after consultation. See generally id. 4-1.7(b).

The commentary to rule 4-1.7 further explains that

> [a]n impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. Where more than 1 client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by rule 4-1.9.

Comment to R. Regulating Fla. Bar 4-1.7. "[L]oyalty to a client prohibits undertaking representation directly adverse to that client's or another client's interests without the affected client's consent." Id. And, "[o]rdinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated." Id.

Accordingly, the comment to rule 4-1.7 clearly explains that counsel may withdraw from the representation when "a conflict arises after representation has been undertaken[,]" but that counsel has the duty to decline representation if the conflict "exist[s] before representation is undertaken." Id. (Emphasis added.) Attorneys may not avoid this rule by taking on representation in which a conflict of

interest already exists and then convert a current client into a former client by withdrawing from the client's case. See Clements, 2006 WL 2252541, at *2 (explaining that a lawyer or law firm "may not simply [choose] to drop one client 'like a hot potato' in order to treat it as though it were a former client for the purpose of resolving a conflict of interest dispute"); Unified Sewerage Agency v. Jelco, Inc., 646 F.2d 1339, 1345 n.4 (9th Cir. 1981) (noting that, if the duty of loyalty did not prevent this practice, "the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client"). In fact, we have previously held that "[a]n attorney engages in unethical conduct when he undertakes a representation when he either knows or should know of a conflict of interest prohibiting the representation." The Fla. Bar v. Scott, 39 So. 3d 309, 316 (Fla. 2010).

The conflict of interest in this case existed long before Gerson and Hunter undertook the litigation against FAMRI and should have been apparent to both Gerson and Hunter. Specifically, with regard to Hunter, the conflict should have been evident the moment the idea of suing FAMRI was first raised, because he had represented Blissard, who is a member of FAMRI's board, for ten years, and the petition against FAMRI accuses the board (including Blissard) of misusing funds. Simply put, the action against FAMRI's board is "directly adverse" to the interests of Blissard, and the commentary to rule 4-1.7 clearly explains that "loyalty to a

- 14 -

client prohibits undertaking representation directly adverse to that client's or another client's interests without the affected client's consent." Comment to R. Regulating Fla. Bar 4-1.7. In fact, the record establishes that Hunter did not even seek out Blissard's consent; rather, she independently learned of the plan to file a petition against FAMRI and contacted Hunter directly to express her objections. Therefore, because the conflict of interest existed before the litigation against FAMRI was undertaken, Hunter had a duty under rule 4-1.7 to decline to pursue the petition against FAMRI, and his withdrawal as Blissard's counsel after the fact did not resolve this conflict or preclude the application of rule 4-1.7 to determine whether he should have been disqualified as counsel in the action against FAMRI.

Likewise, with regard to Gerson, the impermissible conflict of interest should have been apparent to him when he received notification from his clients, Raiti Waerness and Peggy Spurgeon, that they objected to the action against FAMRI. And, like Hunter, his subsequent withdrawal as Waerness' counsel did not resolve the conflict of interest or evade the applicability of rule 4-1.7.

Additionally, even though Gerson may not have been direct counsel to Young or Blissard, and Hunter may not have been direct counsel to Young, given the team approach to representation by the flight attendants' counsel in the progeny litigation and the sharing of information and confidences that occurred, the conflict of interest in pursuing the action against FAMRI should have been evident. See

- 15 -

<u>Visual Scene, Inc. v. Pilkington Bros., PLC.</u>, 508 So. 2d 437, 440 n.3 (Fla. 3d DCA 1987) (explaining that where groups of attorneys and clients work together and pool or share litigation information, "for the limited purpose of the 'pooled information' situation, the attorney for one becomes the attorney for the other"); <u>see also</u> <u>Mansur v. Podhurst Orseck, P.A.</u>, 994 So. 2d 435, 438 (Fla. 3d DCA 2008) (explaining that the test for whether there is an attorney-client relationship is whether the client has a "reasonable" belief that she or he is represented by the attorney) (quoting <u>The Fla. Bar v. Beach</u>, 675 So. 2d 106, 109 (Fla. 1996)).

Additionally, we conclude that disqualification was also warranted under rule 4-1.9. Rule 4-1.9 concerns conflicts of interest with former clients and provides the following:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
> (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
> (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

R. Regulating Fla. Bar 4-1.9(a)-(c). "Matters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed

for the former client." Comment to R. Regulating Fla. Bar 4-1.9. A party seeking disqualification under rule 4-1.9 does not have to demonstrate actual prejudice to the former client as a result of the subsequent representation because the existence of an attorney-client relationship "giv[es] rise to an irrefutable presumption that confidences were disclosed." K.A.W., 575 So. 2d at 633-34.

In this case, as the trial court found, the petition against FAMRI, the individual progeny suits, and the original class action are substantially related because they involve the same transaction or legal dispute. Specifically, the original class action resulted in the underlying settlement agreement that established FAMRI, set limitations on the use of FAMRI's funds (which the current petition seeks to distribute), and contemplated the individual progeny suits by the flight attendants against the tobacco companies. Gerson and Hunter represented many of the flight attendants in their individual suits. Now, Gerson and Hunter have accused FAMRI of not living up to the settlement's mandate, assert that FAMRI's alleged lack of research is "a substantial reason for the disappointing outcomes of [the] individual lawsuits," and seek to have the funds given to FAMRI as part of the settlement agreement dispersed to only a handful of the former class members. Consequently, we find that the individual litigation and the action against FAMRI are substantially related as that term is defined in rule 4-1.9. And, it is clear that the interests of the individuals participating in the action

against FAMRI are materially adverse to the interests of Hunter and Gerson's former clients who objected to the petition against FAMRI and did not give their informed consent. Therefore, we agree with the trial court's determination that rule 4-1.9(a) was violated.

Accordingly, we find that disqualification was warranted in this case.

## III.  CONCLUSION

For the reasons explained above, we quash the Third District's decision below and reinstate the trial court's disqualification order.

It is so ordered.

PARIENTE, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Third District - Case No. 3D11-2129

(Miami-Dade County)

Christian Dietrich Searcy of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, Florida; David Joseph Sales, Jupiter, Florida; John Wesley Kozyak, Thomas A. Tucker Ronzetti, Rachel Sullivan, and Jessica E. Elliott of Kozyak Tropin & Throckmorton, P.A., Coral Gables, Florida; John Stewart Mills, Andrew Manko, and Courtney Rebecca Brewer of The Mills Firm, P.A., Tallahassee, Florida; Miles Ambrose McGrane, III of The McGrane Law Firm, Miami, Florida; and Roderick Norman Petrey, Coral Gables, Florida,

for Petitioners

Steven Kent Hunter and Christopher J. Lynch of Hunter, Williams & Lynch, P.A., Miami, Florida; Philip Maurice Gerson and Edward Steven Schwartz of Gerson & Schwartz, P.A., Miami, Florida; Stanley M. Rosenblatt and Susan Rosenblatt of Stanley M. Rosenblatt, P.A., Miami, Florida; Marvin Weinstein of Grover & Weinstein P.A., Miami Beach, Florida; Mark Jurgen Heise and Antonio C. Castro of Boies, Schiller & Flexner, Miami, Florida; Kelly Anne Luther of Kasowitz Benson, Miami, Florida; Edward A. Moss and Kenneth James Reilly of Shook Hardy & Bacon, LLP, Miami, Florida; David Ross of Green Traurig, LLP, Miami, Florida; Douglas Chumbley and Benjamin Reid of Carlton Fields, Miami, Florida; and Stephanie Ethel Parker, John F. Yarber, and John M. Walker of Jones Day, Atlanta, Georgia,

for Respondents