DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MITCHELL ROBERT LANDIS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-0390

[December 11, 2024]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; William L. Roby, Darren Steele, and Sherwood Bauer Jr., Judges; L.T. Case No. 432018CF000341A.

Olivia M. Goodman of O'Brien Hatfield, P.A., Tampa, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Kimberly T. Acuña, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

Appellant appeals his convictions for trafficking in oxymorphone, conspiracy to traffic in oxymorphone, and unlawful use of a two-way communications device. We affirm on all issues, and write only to address two issues raised by appellant. One, appellant claims that the trial court erred in denying his motion to reinstate appellant's retained counsel, and two, appellant claims that the trial court committed fundamental error during the sentencing hearing. We find both issues to be without merit and, thus, we affirm. As to the remaining issues raised by appellant, we affirm without further comment.

Appellant and his codefendant were charged with trafficking in oxymorphone (4 grams or more but less than 14 grams) and conspiracy to traffic in oxymorphone (4 grams or more but less than 14 grams). Appellant was also charged individually with unlawful use of a two-way communications device.

At trial, a law enforcement officer, who was a narcotics detective at the time in question, testified that he worked with a confidential informant ("CI") who was "working off" felony charges for possession of controlled substances. The CI provided appellant's name as someone he knew who could be selling narcotics. The CI initiated two controlled recorded phone calls to appellant. Appellant

chose the meeting location and set the price at $50 per pill of oxymorphone.

Several law enforcement officers testified that appellant and his codefendant arrived at the meeting location in appellant's truck. They observed the codefendant get into the front passenger seat of the CI's vehicle. The codefendant then got back into appellant's truck. The CI gave the officers the 20 oxymorphone pills that he purchased.

The CI, a one-time convicted felon, testified that he knew appellant as someone he could purchase oxymorphone from. The CI agreed to assist the Martin County Sheriff's Office in exchange for not being charged with possession of narcotics. The CI made two recorded controlled phone calls to appellant. The CI arranged a deal to purchase 20 oxymorphone pills from appellant. The price was going to be $40 per pill, but then appellant increased the price by $10 per pill. Appellant suggested the meeting location. After the CI arrived, the codefendant entered the CI's vehicle. The CI gave the codefendant $1,000 in exchange for the pills. Prior to this transaction, all of the CI's communications were with appellant and none were with the codefendant.

The controlled phone calls were published to the jury. In the first call, appellant said the price per pill was $50, not $40. In the second call, appellant told the CI where to meet him. The video recording of the drug transaction between the CI and the codefendant was also published to the jury.

A forensic scientist testified that the 20 pills contained oxymorphone and weighed a total of 4.2 grams.

The jury found appellant guilty as charged. This appeal follows.

ISSUE I

Two years after the proceedings commenced, appellant's codefendant moved to disqualify appellant's defense counsel, alleging appellant's attorney had previously represented the codefendant. Evidence during a hearing on the motion showed that the state had recently listed the codefendant as a witness. Appellant's current counsel and the codefendant met a few days after the codefendant's arrest. The attorney told the codefendant it would be two to three years before the case was over, the codefendant should refer any detectives who contacted her to the attorney, and not to talk with anyone about the case. The codefendant met with the attorney again a second time a few weeks later. At this meeting, the attorney showed the codefendant "something," and the codefendant said "something" in response to what the attorney had shown her. Nevertheless, the attorney said he could not represent the codefendant because of a conflict of interest.

After the hearing, the trial court entered an order granting the motion to

disqualify. The trial court found "no question that the interests of [the codefendant] and [appellant] are materially adverse and that this adverse position is in the same matter(s)." The trial court found that an attorney-client relationship existed between the codefendant and the attorney. The trial court concluded that the attorney had previously represented the codefendant and that disqualification of the attorney was required by rules 4-1.7 and 4-1.9 of the Rules Regulating the Florida Bar. The trial court denied appellant's motion for rehearing, reconsideration, and/or clarification.

Subsequently, appellant's new counsel filed a motion for reconsideration of the motion to disqualify based on the codefendant's death. After considering the parties' memoranda, the trial court denied the motion as untimely as well as on the merits. The trial court found that the basis for granting the motion to disqualify the attorney remained unchanged, as the attorney-client privilege survives the client's death.

After the original judge recused from the case, appellant again moved for reconsideration of the order disqualifying appellant's previous attorney. The successor judge found that the disqualification stood. The case was later reassigned to a third judge who presided at trial. At the beginning of trial, defense counsel re-raised the issue yet again, and the trial court pointed out that the motion had been denied.

On appeal, appellant claims that the trial court erred in denying his motion to reinstate his counsel of choice, after disqualifying his original counsel due to conflict. Appellant disputes that there was a conflict that justified the disqualification or the denial of reinstatement. We disagree.

We review the denial of a motion to substitute counsel under the standard of abuse of discretion. *Alvarez v. State*, 75 So. 3d 420, 422 (Fla. 4th DCA 2011). Further,

> [t]he standard of review for orders entered on motions to disqualify counsel is that of an abuse of discretion. While the trial court's discretion is limited by the applicable legal principles, the appellate court will not substitute its judgment for the trial court's express or implied findings of fact which are supported by competent substantial evidence.

*Young v. Achenbauch*, 136 So. 3d 575, 581 (Fla. 2014) (quoting *Applied Digital Solutions, Inc. v. Vasa*, 941 So. 2d 404, 408 (Fla. 4th DCA 2006)).

Although the Sixth Amendment's right to counsel creates a presumption favoring a defendant's choice of counsel, that right is not absolute. *Bentz v. State*, 251 So. 3d 201, 204 (Fla. 4th DCA 2018) (citing *Wheat v. United States*,

486 U.S. 153, 159 (1988)).  The presumption of the right of defendant's counsel of choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict."  *Wheat*, 486 U.S. at 164.

When there is an attorney-client relationship, there is an "irrefutable presumption that confidences were disclosed."  *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991).  Further, according to section 90.502(1)(b), Florida Statutes (2022), a client in the lawyer-client privilege is "any person . . . who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer."  Pursuant to section 90.502, "[a] person obtains the status of a 'client' by consulting an attorney for the purpose of obtaining legal advice.  Whether the person seeking legal advice subsequently retains the attorney is irrelevant."  *State v. Rabin*, 495 So. 2d 257, 260 (Fla. 3d DCA 1986) (citations omitted).  Thus, the attorney-client "privilege does not turn on the client actually hiring or engaging the attorney."  *Dean v. Dean*, 607 So. 2d 494, 497 (Fla. 4th DCA 1992).

In considering the disqualification of appellant's counsel, we also look to the rules that regulate the actions of attorneys by the Florida Bar.  Rule 4-1.7(a)(1) of the Rules Regulating the Florida Bar states that "a lawyer must not represent a client if . . . the representation of 1 client will be directly adverse to another client . . . ."  Additionally, rule 4-1.9 of the Rules Regulating the Florida Bar states that "[a] lawyer who has formerly represented a client in a matter must not afterwards . . . represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent . . . ."

We find that the trial court did not err because competent substantial evidence supports the trial court's finding that an attorney-client relationship existed between the codefendant and the attorney whom appellant wanted to reinstate.  The attorney and the codefendant had met a few days after the codefendant's arrest.  The attorney advised the codefendant to refer any law enforcement who contacted her to the attorney.  The attorney advised the codefendant not to speak to anyone about the case and surmised that it could take two to three years before the case was over.  The attorney met with the codefendant a second time a few weeks later, and at this meeting the attorney showed the codefendant "something" and the codefendant said "something" in response to what the attorney had shown her.  Although the codefendant did not retain appellant's attorney, all these interactions support the conclusion that the codefendant was a client consulting with the attorney for the purpose of engaging the attorney for legal services.

Only later in the proceedings did the state list the codefendant as an

"additional witness."[1]  The fact that the codefendant consulted with the same attorney who represented appellant confirms the existence of a conflict and the resulting removal of the attorney from this case.  "An attorney's previous relationship with a client who has become a witness for the government and plans to testify against the attorney's current client presents a dilemma of divided loyalty." *Kolker v. State*, 649 So. 2d 250, 251 (Fla. 3d DCA 1994).  That dilemma appeared in this case when the codefendant, who previously consulted with appellant's counsel, decided to enter a plea and was placed on the state's witness list against appellant.

Subsequently, the codefendant died, and appellant requested the court allow him to retain the same counsel previously removed for conflict due to consulting with the now-deceased codefendant.  Appellant argues that the conflict died with the codefendant.  We disagree.  The fact that the codefendant died does not render the trial court's decision as error because "the privilege continues after the individual's death." *Swidler & Berlin v. United States*, 524 U.S. 399, 405 (1998).  We find that the trial court did not abuse its discretion in disqualifying appellant's original counsel based on conflict, nor did the trial court abuse its discretion when it denied appellant's request to reinstate the original attorney.

ISSUE II

At sentencing, the state presented the testimony of two law enforcement officers.  The first officer testified that he worked in the Martin County Sheriff's Office's narcotics unit from 1999 to 2013.  In 1999, the unit was "heavily invested" in appellant, who was allegedly trafficking marijuana, opioids, and cocaine.  In 2002, the officer became involved in investigating appellant, but appellant "used all of his intelligence to shield himself from getting arrested." Appellant used drug addicts to carry and safehouse his drugs, so they took the fall instead of appellant.  A wiretap led to appellant's conviction for conspiracy to traffic oxycodone in 2002.  The trial court took judicial notice of appellant's conviction in that case.  The officer testified that appellant "was a part of getting the opioid crisis running in Martin County . . . ."  In terms of the hierarchy of drug dealers in Martin County, appellant was "right at the top . . . ."

---

[1] Appellant argues that the conflict was waived by failing to raise this issue in a timely manner and instead waiting two years to assert this conflict.  However, appellant did not raise this argument at the hearing on the motion to disqualify counsel and thus did not bring this argument to the trial court's attention.  Appellant only raised this argument for the first time in a motion for reconsideration of the prior judge's ruling. *See Chris Thompson, P.A. v. GEICO Indem. Co.*, 349 So. 3d 447, 448-49 (Fla. 4th DCA 2022) (stating it is not an abuse of discretion to deny a motion for reconsideration which raises an issue that could have been raised in the initial motion or at the initial hearing); *State v. Rogers*, 391 So. 3d 661, 667 (Fla. 1st DCA 2024) (declining to consider an argument raised for the first time in a motion for rehearing where there was no indication in the record that the trial court addressed the new argument on the merits).

The second officer testified that in 2017, Martin County and the rest of the nation were experiencing the height of the opioid epidemic. Appellant was convicted in this case of trafficking in oxymorphone, which is the generic name of a prescription pain killer known for being extremely addictive. The Martin County Sheriff's Office made it a priority to shut down the opioid flow in Martin County. The sheriff's office knew of appellant through past law enforcement investigations as well as tips and statements that people gave during arrests.

Appellant's scoresheet showed his lowest permissible sentence was 44.7 months, and his maximum sentence was 65 years. The state requested that the trial court sentence appellant to 45 years. The state requested a high sentence because appellant "is not just a drug trafficker in Martin County, he is the drug trafficker in Martin County . . . ." The state argued that appellant used the codefendant to protect himself by having her deliver the narcotics and collect the money. The state further argued that appellant's prior criminal history demonstrated this was a lifelong commitment. In 2002, appellant was convicted of a very similar crime—conspiracy to traffic in oxycodone—which showed this was not an aberration.

The trial court sentenced appellant to 20 years for trafficking oxymorphone, 15 years for conspiracy to traffic oxymorphone, and 5 years for the unlawful use of a two-way communications device, with all counts to run consecutively, for a total sentence of 40 years. In sentencing appellant, the trial court stated it was the court's intent that appellant "never see the light of day" and that he was "a danger to the community."

Appellant argues that the trial court committed fundamental error when it considered impermissible factors of uncharged crimes and bad acts during appellant's sentencing hearing.

A fundamental sentencing error is "one that affects the determination of the length of the sentence such that the interests of justice will not be served if the error remains uncorrected." *Compere v. State*, 262 So. 3d 819, 822 (Fla. 4th DCA 2019) (quoting *Maddox v. State*, 760 So. 2d 89, 100 (Fla. 2000)). Generally, "when a sentence is within statutory limits, it is not subject to review by an appellate court." *Charles v. State*, 204 So. 3d 63, 66 (Fla. 4th DCA 2016) (quoting *Howard v. State*, 820 So. 2d 337, 339 (Fla. 4th DCA 2002)). However, "a trial court's consideration of a constitutionally impermissible sentencing factor is a fundamental error in the sentencing process" reviewable for the first time on direct appeal. *Hillary v. State*, 232 So. 3d 3, 4 (Fla. 4th DCA 2017).

Appellant's sentence was within the statutory limits. The trial court sentenced appellant to 40 years, which was less than the 45 years requested by the state and less than the statutory maximum of 65 years. Nothing in the

record supports the claim that the trial court relied on any improper arguments, testimony, or other impermissible sentencing factors. The trial court is permitted to consider the circumstances surrounding the crimes for which appellant was being sentenced. § 921.002(1)(c), Fla. Stat. (2022); Fla. R. Crim. P. 3.701(b)(3). The trial court is also permitted to consider appellant's prior criminal history, which included a conviction in 2002 for trafficking in oxycodone. *Parr v. State*, 247 So. 3d 550, 556 (Fla. 4th DCA 2018) ("Because the prior criminal history of a defendant is deemed relevant, even if not scored for the CPC lowest permissible sentence, the court may consider it in sentencing.").

*State v. Garcia*, 346 So. 3d 581 (Fla. 2022), is instructive. In that case, the state presented evidence of the defendant's misconduct while out on bond. *Id.* at 583. The supreme court found that the trial court did not commit fundamental error in sentencing the defendant. *Id.* at 586. The supreme court explained: "[T]he sentencing judge gave no indication of having given weight to any arrest or charge supported merely by probable cause." *Id.* Instead, the trial court had before it evidence concerning the circumstances surrounding the charged offenses, as well as the defendant's prior criminal record, and imposed a sentence within the permissible range. *Id.* The supreme court concluded: "We cannot say that this determination reflects the trial court's having committed fundamental error on the order of an illegal sentence." *Id.*; *see also Nelson v. State*, 392 So. 3d 174, 181 (Fla. 5th DCA 2024) ("*Garcia* rejected the premise that reliance on an impermissible sentencing consideration *per se* constitutes fundamental error.").

Also instructive is *Charles v. State*, 204 So. 3d 63 (Fla. 4th DCA 2016). In that case, the defendant's lowest permissible sentence was 79.8 months. *Id.* at 65. "The State urged the court to impose the maximum sentence based on Appellant's lengthy prior record and to 'send a clear message to everyone who decides to participate in a violent criminal organization' that 'a life in crime does not pay.'" *Id.* The trial court, "without any comment or elaboration," sentenced the defendant to the maximum sentence, which was nearly 66 years in prison. *Id.* (emphasis omitted).

This court rejected the defendant's claim that his sentence may be based on improper sentencing considerations. *Id.* at 66-67. As the concurring opinion noted: "It is clear that the sentence imposed in this case was legal as it fell within the statutory limits under the Criminal Punishment Code." *Id.* at 69 (Levine, J., concurring). "Notably, the trial court did not make any statements indicating that its sentence was motivated by deterrence." *Id.* One could "only speculate that the trial court must have sentenced appellant based on the state's argument of deterrence since the state argued it, and once again, the trial court was silent as to reasons at the time of sentencing." *Id.*

In the present case, the trial court heard testimony from officers as to the

background related to this crime and prior relevant proven criminal activity. To the extent any testimony included information related to unproven criminal activity, the trial court did not state, nor is there evidence in this record, that the trial court considered it when imposing sentence. "[T]rial judges are routinely made aware of information which may not be properly considered in determining a cause. Our judicial system is dependent upon the ability of trial judges to disregard improper information and to adhere to the requirements of the law in deciding a case or in imposing a sentence." *Harvard v. State*, 414 So. 2d 1032, 1034 (Fla. 1982). Thus, we can rely on the trial court to adhere to proper sentencing factors and to not consider improper information when meting out a sentence. Appellant's previous conviction of a similar type of offense would support the trial court's statement that appellant was a "danger to the community." Appellant was convicted of conspiracy to traffic in narcotics in 2002 and was again convicted in the present case of conspiracy to traffic in narcotics, among other offenses.

The cases that appellant cites are distinguishable because in those cases, the trial court made comments that clearly demonstrated the court was relying on uncharged conduct. *See Shelko v. State*, 268 So. 3d 1003, 1005 (Fla. 5th DCA 2019) (reversing and remanding for resentencing on possession of methamphetamine where trial court's statements suggested its belief that the defendant was also involved in the uncharged offense of sale of methamphetamine); *Petit-Homme v. State*, 284 So. 3d 1126, 1128 (Fla. 5th DCA 2019) (reversing and remanding where the trial court made statements, in sentencing the defendant, indicating it relied on unsubstantiated facts in the arrest affidavit); *Nichols v. State*, 283 So. 3d 947, 950 (Fla. 2d DCA 2019) (reversing and remanding for resentencing where the trial court's statements indicated its belief that the defendant was also involved with an uncharged homicide).

The fundamental error "standard imposes a high burden on the defendant to establish that the error 'goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process.'" *Abdool v. State*, 53 So. 3d 208, 220 (Fla. 2010) (quoting *Bailey v. State*, 998 So. 2d 545, 554 (Fla. 2008)). Appellant in this case has not met this high burden.

In summary, we find that the trial court did not abuse its discretion in finding appellant's attorney to have a conflict and subsequently not granting a motion to reinstate counsel. Further, we find there was no fundamental error in the court's sentencing of appellant. As such, we affirm.

*Affirmed.*

DAMOORGIAN and ARTAU, JJ., concur.

*      *      *

*Not final until disposition of timely filed motion for rehearing.*