Futo CHARLES, Appellant,

v.

STATE of Florida, Appellee.

No. 4D11–3314.

District Court of Appeal of Florida, Fourth District.

Oct. 26, 2016.

Carey Haughwout, Public Defender, and Emily Ross–Booker, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

ON APPELLEE'S MOTION FOR REHEARING

FORST, J.

We grant the Motion for Rehearing filed by Appellee the State of Florida. We withdraw our previously issued opinion

dated May 31, 2016, and replace it with the following.[1]

Futo Charles appeals his convictions and sentences for several gang-related crimes. We affirm the convictions without comment and write only to address the propriety of the sentencing process. Appellant argues his sentences should be reversed because they may be based on improper sentencing considerations. We disagree and therefore affirm the sentences.

## Background

Appellant was indicted along with several co-defendants on allegations. that he was a member of the "Top 6" gang, a violent criminal enterprise operating in Palm Beach County. Appellant initially cooperated with the authorities in hopes of securing a plea agreement. The record reveals that two plea agreements were reached—the first imposing an eight-year sentence and the second imposing a fifteen-year sentence. Both agreements were rejected by Judge Karen Miller, who had presided over the trials of two of Appellant's co-defendants.[2] At his change of plea hearing, the lead investigator of the Top 6 gang testified that Charles's cooperation had been instrumental in dismantling the gang. The investigator, along with the State, urged the court to accept the plea agreement imposing the fifteen-year sentence so that Appellant could continue to cooperate with the authorities. Despite this testimony, Judge Miller would not accept the plea.

After a two-week trial, the jury found Appellant guilty of racketeering, conspiracy to commit racketeering, possession of Ecstasy/MDMA, and possession of marijuana. He was also convicted of twelve predicate offenses, but was found not guilty of all the predicate offenses involving gun violence—aggravated assault with a firearm; shooting into a building; felon in possession of firearm or ammunition; and shooting into an occupied vehicle.

According to his scoresheet, Appellant's lowest permissible sentence was 79.8 months. The State urged the court to impose the maximum sentence based on Appellant's lengthy prior record and to "send a clear message to everyone who decides to participate in a violent criminal organization" that "a life in crime does not pay." Following argument by both sides, *and without any comment or elaboration,* Judge Miller sentenced Appellant to nearly sixty-six years in prison.[3] This was the maximum possible sentence within the range set by the Criminal Punishment Code ("CPC").

## Analysis

■ At the outset, we make particular note of the decisions by the State, to request a sentence of nearly sixty-six years, and the trial court, to grant this request. The latter imposed the maximum possible sentence, ruling that Appellant's sentences were to run *consecutively,* rather than concurrently, which seems to be the norm. *See* § 921.16(1), Fla. Stat. (2000) (setting the default for crimes charged together as concurrent).

Even though the State proposed, pretrial, eight and fifteen year sentences as a reward for Appellant's assistance, after his conviction it sought the maximum penalty, a nearly sixty-six year sentence, notwithstanding Appellant's assistance.

1. We deny the State's motion to certify questions of great public importance.

2. Appellant's co-defendants received sentences of twenty-five years each.

3. Thirty years for racketeering, thirty years for conspiracy to commit racketeering, five years for possession of Ecstasy/MDMA, and eleven months and twenty-nine days for possession of marijuana, all counts to run consecutively.

Nonetheless, there does not appear to be a legal remedy to address the concerns raised by the conduct of the State Attorney and the trial court. Appellant has failed to establish that the trial court abused its discretion in rejecting the two plea deals (and there is no rule addressing ineffective assistance of opposing counsel), and the sentences imposed are within the sentencing guidelines. The only questions concern whether the trial court, in response to the State's request that the court send a message, considered deterrence as a sentencing factor and, if it did, whether that violated Appellant's due process rights, despite the sentence being within the sentencing guidelines.

Addressing the speculation first, the trial judge made no comment following the "send a message" statement that indicated she would consider the State's request. "[T]rial judges are routinely made aware of information which may not be properly considered in determining a cause. Our judicial system is dependent upon the ability of trial judges to disregard improper information and to adhere to the requirements of the law in deciding a case or in imposing a sentence." *Harvard v. State*, 414 So.2d 1032, 1034 (Fla.1982). There is no evidence in the record that the trial court was, in any manner, influenced by the State's "send a message" entreaty.

■ As to the sentence itself, "the general rule in Florida is that when a sentence is within statutory limits, it is not subject to review by an appellate court." *Howard v. State*, 820 So.2d 337, 339 (Fla. 4th DCA 2002). However, when a trial court relies on impermissible factors in sentencing a defendant, the court violates the defendant's due process rights. *See, e.g., Seays v. State*, 789 So.2d 1209, 1210 (Fla. 4th DCA 2001). Our standard of

review is de novo. *Cromartie v. State*, 70 So.3d 559, 563 (Fla.2011).

The Florida Supreme Court has recently held "that the CPC is unambiguous concerning the factors a trial court may consider in sentencing a defendant." *Norvil v. State*, 191 So.3d 406, 409 (Fla.2016). Under the CPC, the "primary purpose" of sentencing is "to punish the offender." § 921.002(1)(b), Fla. Stat. (2011).[4]

■ Deterrence, along with retribution, is one of "the traditional aims of punishment." *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Goad v. Fla. Dept. of Corr.*, 845 So.2d 880, 884 (Fla.2003). "The premise is that by confining criminal offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they *and others* will be deterred from committing additional criminal offenses." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (emphasis added). This view of deterrence as a legitimate consideration in sentencing has been recognized in Florida both before and since the adoption of the CPC. *See, e.g., Mendenhall v. State*, 48 So.3d 740, 746 (Fla.2010) ("[I]n enacting the 10–20–Life statute, the Legislature 'has very clearly mandated that it is the policy of this State to deter the criminal use of firearms.'" (quoting *McDonald v. State*, 957 So.2d 605, 611 (Fla.2007))); *State v. Brewer*, 767 So.2d 1249, 1253 (Fla. 5th DCA 2000) (stating that "[t]here are four penological goals involved in criminal sentencing: retribution, deterrence, incapacitation, and rehabilitation"); *Boyd v. State*, 546 So.2d 132, 133 (Fla. 4th DCA 1989) (noting that "one purpose of punishment is deterrence, as it surely must be"), *quashed on other*

---

4. Rehabilitation of the offender is another stated goal which is "subordinate to the goal

of punishment." § 921.002(1)(b), Fla. Stat. (2011).

*grounds*, 558 So.2d 1025 (Fla.1990); *Freeman v. State*, 382 So.2d 1307, 1308 (Fla. 3d DCA 1980) ("A sentence may be imposed for one or more of the following purposes: (a) to punish; (b) to deter similar criminal acts; (c) to protect society; or (d) to rehabilitate.").

■ Thus, deterrence, both general ("send a message to the community") and specific (send a message to the individual being sentenced), is not merely one factor amidst the sea of relevant sentencing considerations; it is a key component of punishment itself—the "primary purpose" of sentencing under the CPC. The dissent's construction of the term "punishment" is too narrow.[5]

We note it is true that Florida's appellate courts have held that a trial court may not impose a departure sentence simply because the court believes it will serve as a deterrent to others or that it will send a message to the community. *E.g., Wilson v. State*, 524 So.2d 1161, 1162 (Fla. 2d DCA 1988); *Mitchell v. State*, 507 So.2d 686, 688 (Fla. 1st DCA 1987). Appellate courts have also held that, in juvenile cases, the trial court may not *depart* from the recommended sentence of the Department of Juvenile Justice ("DJJ") in order to send a deterrent message to others in the community. *E.g., C.C.B. v. State*, 828 So.2d 429, 431 (Fla. 1st DCA 2002). But these cases are inapplicable here because the instant case does not involve a departure sentence. Instead, the sentences imposed for each offense were under the maximum possible sentences. The rationales behind the rules for departure—preventing every

crime from being aggravated and specially tailoring juvenile sentences to the needs of the child—do not apply when the sentence imposed is within the range allowed for an adult's sentence. *See Whitmore v. State*, 27 So.3d 168, 172–73 (Fla. 4th DCA 2010) ("In sentencing within the law's minimum and maximum, the discretion afforded is about as broad as discretion can be for trial judges.").

### Conclusion

There is no evidence that the trial court acted upon the State's request to "send a message to the community." In any case, however, it is not impermissible for a sentence to be used as a means of general deterrence. Accordingly, we affirm.

*Affirmed.*

LEVINE, J., concurs specially with opinion.

GROSS, J., dissents with opinion.

LEVINE, J., concurring specially.

I agree with the majority opinion in granting rehearing and affirming the trial court. I write separately to explain additional reasoning for granting rehearing.

Following the retirement of the Honorable W. Matthew Stevenson, the "luck of the draw" placed me on a three-judge panel assigned to consider the motion for rehearing. In determining the appropriate standard a successor judge is to apply when passing on a motion for rehearing, I am guided by Judge Bilbrey's concurrence in *Gretna Racing, LLC v. Department of*

---

5. If punishment was construed to merely include societal retribution, there would be no basis for seat belt laws (which we acknowledge are non-criminal and thus not covered by the CPC). "Florida's Safety Belt Law" states that "[a]ny person who violates [that law] commits a nonmoving violation, *punishable* as [a noncriminal traffic infraction]."

§ 316.614(7)-(8), Fla. Stat. (2015) (emphasis added). Clearly, such punishment is not for the sake of societal retribution; the penalty is "in recognition of the fatalities and injuries attributed to unrestrained occupancy of motor vehicles" and for the purpose of deterrence.

*Business & Professional Regulation,* 178 So.3d 15 (Fla. 1st DCA 2015), *review granted sub nom. Gretna Racing, LLC v. Florida Department of Business & Professional Regulation,* SC15–1929, 2015 WL 8212827 (Fla.2015).

As Judge Bilbrey noted, "the judgment of a retired colleague is entitled to some deference." *Id.* at 30.

> While a judge should hesitate to undo his own work, and should hesitate still more to undo the work of another judge, he does have, until final judgment, the power to do so and may therefore vacate or modify the Interlocutory rulings or orders of his predecessor in the case. This 'code' of restraint is not based solely on the law of the case but is founded upon considerations of comity and courtesy.

*Id.* (quoting *Tingle v. Dade Cty. Bd. of Cty. Com'rs,* 245 So.2d 76, 78 (Fla.1971)). Although deference is required, "a successor judge is not required to always vote identically to the predecessor on rehearing." Id. "After all, it is not uncommon for any judge to change his or her mind when faced with a motion for rehearing." Id.

As to the appropriate standard a judge should apply to a motion for rehearing:

> Rule 9.330(a), Florida Rules of Appellate Procedure, provides in part, "[a] motion for rehearing shall state with particularity the points of law or fact that, in the opinion of the movant, the court has overlooked or misapprehended in its decision." Furthermore, "[a] motion for rehearing must address some error or omission in the resolution of an issue previously presented in the main argument." Phillip [sic] J. Padovano, Florida Appellate Practice § 21:2 (2015).

*Id.* at 31.

In the instant case, it is clear that the original panel decision did not "overlook[ ]"

any points of law or fact. However, rehearing is also appropriate under rule 9.330(a) if the original decision "misapprehended" some point of law or fact. This provision affords "greater leeway" in granting rehearing. *Gretna Racing,* 178 So.3d at 31 (Bilbrey, J., concurring). It is under this provision that I agree it is appropriate to grant rehearing in this case.

An appellate court must afford substantial deference both to the legislature and the sentencing court. *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The legislature has broad authority in determining the types and limits of punishments for crimes. *Id.* "The provision of criminal penalties and of limitations upon the application of such penalties is a matter of predominantly substantive law and, as such, is a matter properly addressed by the Legislature." § 921.002(1), Fla. Stat. (2011).

Additionally, trial courts "in this country have long exercised discretion ... in imposing sentence within statutory limits in the individual case." *Apprendi v. New Jersey,* 530 U.S. 466, 481, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (emphasis omitted). Within the criminal penalties set forth by the legislature, "[t]he trial court judge may impose a sentence up to and including the statutory maximum for any offense." § 921.002(1)(g), Fla. Stat. Because of a trial court's "considerable discretion in sentencing within the minimum and maximum allowed by law," *see German v. State,* 27 So.3d 130, 132 (Fla. 4th DCA 2010), a sentence within the statutory limits is not subject to review by an appellate court, *Evans v. State,* 816 So.2d 742, 743–44 (Fla. 4th DCA 2002). *See also Solem,* 463 U.S. at 290 n. 16, 103 S.Ct. 3001 ("[I]t is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence."); *Banks v. State,*

342 So.2d 469; 470 (Fla.1976) (stating that an appellate court lacks jurisdiction to interfere if a sentence is within the limits prescribed by the legislature). An exception to this rule exists only where the imposition of sentence violates a defendant's constitutional rights. *German*, 27 So.3d at 132; *Evans*, 816 So.2d at 744.

Examples of such violations are: (1) when a sentencing court relies upon conduct for which a defendant has been acquitted, (2) where a judge imposes a sentence based on the race, religion, political affiliation, or national origin of the defendant, (3) where a judge takes his own religious beliefs into account in sentencing, (4) where a judge improperly considers a defendant's lack of remorse or failure to accept responsibility, or (5) where a sentence is the product of judicial vindictiveness.

*Alfonso–Roche v. State*, 199 So.3d 941 (Fla. 4th DCA 2016) (Gross, J., concurring) (citations omitted).

It is clear that the sentence imposed in this case was legal as it fell within the statutory limits under the Criminal Punishment Code. Indeed, the dissent does not point to any provisions of the sentencing statute enacted by the legislature that the trial court violated. Additionally, appellant's constitutional rights were not violated in imposing the sentence.

Notably, the trial court did not make any statements indicating that its sentence was motivated by deterrence. The dissent does not point to any words spoken by the trial court evidencing an improper or unconstitutional sentence, merely the silence of the trial court. Although articulating reasons for sentencing should be the preferred method, there is no legislative requirement that a trial court state reasons for giving a lawful sentence within the Criminal Punishment Code. Further, the dissent can only speculate that the trial court must have sentenced appellant based on the state's argument of deterrence since the state argued it, and once again, the trial court was silent as to reasons at the time of sentencing. Ultimately, the dissent wants this court to reverse the sentencing based entirely on the conjecture that the trial court must have based its sentencing on the state's argument.

The dissent wants us to accept that deterrence should become disallowed and be "merely another in this line of sentencing factors waiting for elimination." The dissent wants us to select the preferred "sentencing policy" and embrace the "sea change" that sentencing law has recently "undergone." This type of "sea change" should come from the people, through their elected representatives. In the absence of any violation of law or of the Constitution, it is not our role to further the "elimination" of deterrence that the dissent is so eager to expedite, no matter how well intentioned the change sought may be.

The judicial power conferred upon courts is the power " 'to say what the law is,' not the power to change it." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (Scalia, J., concurring) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)). Judges "find[ ]" the law by "discerning what the law is, rather than decreeing what it is today changed to, or what it will tomorrow be." *Id.* (emphasis omitted). Change should "c[o]me not by court decree, but because the people, through their elected representatives, decree[ ] a change." *United States v. Virginia*, 518 U.S. 515, 569, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (Scalia, J., dissenting).

Even if the record showed deterrence were a motivating factor, which it does not, I agree with the majority opinion that

deterrence is an appropriate factor to consider in sentencing. The Criminal Punishment Code specifically provides that the "primary purpose" of sentencing is "to punish the offender." § 921.002(1)(b), Fla. Stat. "Deterrence ... has traditionally been viewed as a goal of punishment." *United States v. Bajakajian*, 524 U.S. 321, 329, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). *See also Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Goad v. Fla. Dep't of Corr.*, 845 So.2d 880, 884 (Fla.2003); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Thus, contrary to the dissent's allegation, the majority has not "added words to statutes that were not placed there by the Legislature."

Although the dissent states that general deterrence is not a proper sentencing factor, this is in tension with the dissent's concurring opinion in *Alfonso–Roche,* which quoted Judge Posner for the proposition that a

> judge's primary focus should be on the traditional triad of sentencing considerations: incapacitation, which prevents the defendant from committing crimes (at least crimes against persons other than prison personnel and other prisoners) until he is released, *general deterrence* (the effect of the sentence in deterring other persons from committing crimes), and specific deterrence (its effect in deterring the defendant from committing crimes after he's released).

199 So.3d at 953 (Gross, J., concurring) (emphasis added). Therefore, because deterrence is an appropriate sentencing consideration, appellant's constitutional rights were not violated in imposing the sentence. Accordingly, this court lacks authority to review appellant's sentence.

The separation of powers doctrine, which prohibits any branch of government from encroaching upon the powers of another, also dictates this result. *See* Art. II, § 3, Fla. Const.; *Sharrard v. State,* 998 So.2d 1188, 1191 (Fla. 4th DCA 2009). "[T]he power to declare what punishment may be assessed against those convicted of crime is not a judicial power, but a legislative power, controlled only by the provisions of the Constitution." *Alfonso–Roche,* 199 So.3d at 958 (Conner, J., concurring) (quoting *Brown v. State,* 152 Fla. 853, 13 So.2d 458, 461 (1943)). Indeed, the legislature has stated that a defendant may appeal from an illegal sentence or a sentence which exceeds the statutory maximum penalty. § 924.06(1)(d), (e), Fla. Stat. (2015). The legislature has not authorized appeals from a sentence simply because it is perceived as lengthy or unduly harsh. *Alfonso–Roche,* 199 So.3d at 958 (Conner, J., concurring). As Judge Conner aptly noted in his concurrence in *Alfonso–Roche,* review of a sentence on such grounds would violate the separation of powers doctrine. *Id.* To the extent any perceived harshness in the sentence exists, it "is best explored, debated, and resolved by the legislature, not the judiciary." *Id.*

I, and many others, share the dissent's concern about fidelity to what the dissent referred to as principles of interpretation championed by Justice Antonin Scalia. The hallmarks of "Scalian" interpretation include adherence to separation of powers, deference to the legislature, as well as the centuries-old understanding that deterrence has been, in part, a legitimate goal of punishment. In the absence of a legislative mandate disallowing deterrence, this remains one of the proper roles of sentencing. As Justice Scalia has recognized, the objective of criminal punishment includes deterrence, rehabilitation, and retribution. *Harmelin v. Michigan,* 501 U.S. 957, 989, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *see also Ewing v. California,* 538 U.S. 11, 31, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003)

(quoting the plurality for the proposition that a "sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation") (Scalia, J., concurring); *Glossip v. Gross*, —— U.S. ——, ——, 135 S.Ct. 2726, 2748, 192 L.Ed.2d 761 (2015) (stating that "egregiousness of the crime is only one of several factors that render a punishment condign-culpability, rehabilitative potential, and the need for deterrence also are relevant"); *Atkins v. Virginia*, 536 U.S. 304, 351, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (recognizing the deterrent effect of a penalty) (Scalia, J., dissenting).

In sum, I agree with the majority opinion to affirm the trial court's original sentence. The legislature has made clear that the trial court has the right to sentence within the Criminal Punishment Code to the statutory maximum so long as imposition of the sentence does not violate the defendant's constitutional rights. In this case, the sentence imposed was within the statutory guidelines and did not violate appellant's constitutional rights. Whether we agree or disagree with the sentence imposed is irrelevant. To hold otherwise would be to rewrite the Criminal Punishment Code—which would clearly be a violation of the separation of powers doctrine—and impermissibly inject our own preferences into sentencing.

GROSS, J., dissenting.

In granting rehearing and affirming the sentences in this case, the newly constituted majority has refused to defer to the legislature in a matter of sentencing policy and has rewritten a statute to achieve a desired result. This flip-flop jurisprudence is contrary to previous pronouncements from at least one panel member.

See, e.g., *State v. C.M.*, 154 So.3d 1177, 1180 (Fla. 4th DCA 2015) (Levine, J.) (stating that courts are "not at liberty to add words to statutes that were not placed there by the Legislature") (quoting *Bay Holdings, Inc. v. 2000 Island Boulevard Condo. Ass'n*, 895 So.2d 1197, 1197 (Fla. 3d DCA 2005)). The majority has abandoned strict Scalian principles of interpretation for a more flexible view of statutory construction that implements the majority's view of sound sentencing policy.

The original panel opinion reversed Charles's sentences because the totality of the circumstances raised the presumption, based largely on the silence of the sentencing judge, that they were based on improper sentencing considerations.[6] The original opinion essentially adopted the procedure used when the totality of the circumstances gives rise to a presumption of judicial vindictiveness. *See Wilson v. State*, 845 So.2d 142, 156 (Fla.2003); *Vardaman v. State*, 63 So.3d 925, 927 (Fla. 4th DCA 2011). In this case, the totality of the circumstances gave rise to a presumption of an improper basis for the sentence which was not dispelled by the silence of the sentencing judge.

Charles was indicted along with several co-defendants on allegations that he was a member of the "Top 6" gang, a violent criminal enterprise operating in Palm Beach County. Charles initially cooperated with the authorities in hopes of securing a plea agreement. The record reveals that two plea agreements were reached; the first imposed an eight-year sentence and the second imposed a fifteen-year sentence. The state proposed these plea bargains at a time when the charges included a slew of gun charges: aggravated assault

6. In this dissent, I have borrowed liberally from Judge W. Matthew Stevenson's original panel opinion.

with a firearm, shooting into a building, felon in possession of firearm or ammunition, and shooting into an occupied vehicle.

At a change of plea hearing, the lead investigator of the Top 6 gang testified that Charles's cooperation had been instrumental in dismantling the gang, and put him at great personal risk since his assistance had made him a target for retaliation by the objects of the prosecution. The prosecutor urged the trial court to accept a plea deal of fifteen years imprisonment, even though Charles faced multiple firearm charges. The investigator, along with the state, urged the court to accept the plea agreements so that law enforcement would continue to enjoy Charles's cooperation.

Both agreements were rejected by Judge Karen Miller, who had presided over the trials of two of Charles's co-defendants.[7]

After a two-week trial, the jury found Charles guilty of racketeering, conspiracy to commit racketeering, possession of Ecstacy/MDMA, and possession of marijuana. He was also convicted of twelve predicate offenses, but was found not guilty of all of the predicate offenses that involved gun violence.

According to his scoresheet, Charles's lowest permissible sentence was 79.8 months. In an about face from its previous position, the state urged the court to impose the *maximum* sentence based on Charles's lengthy prior record and to "send a clear message to everyone who decides to participate in a violent criminal organization" that "a life in crime does not pay." Following argument by both sides, without any comment or elaboration, Judge Miller sentenced Charles to nearly sixty-six years in prison.[8] This was the sentence requested by the state and the maximum possible within the range set by the Criminal Punishment Code ("CPC").

The state argues that this court must affirm the sentence because it falls within the CPC's permissible statutory range. "Indeed, the general rule in Florida is that when a sentence is within statutory limits, it is not subject to review by an appellate court." *Howard v. State*, 820 So.2d 337, 339 (Fla. 4th DCA 2002). However, when a trial court relies on impermissible factors in sentencing a defendant, the court violates the defendant's due process rights. *See, e.g., Seays v. State*, 789 So.2d 1209, 1210 (Fla. 4th DCA 2001). Our standard of review is *de novo*. *Cromartie v. State*, 70 So.3d 559, 563 (Fla.2011).

When sentencing a defendant within the statutory range, the judge "may consider a variety of factors, including a defendant's criminal history, employment status, family obligations, and over-all reputation in the community." *Imbert v. State*, 154 So.3d 1174, 1175 (Fla. 4th DCA 2015). The sentencing factors properly considered by the trial court relate to the defendant, his offense, and the victim. *See Apprendi v. New Jersey*, 530 U.S. 466, 481, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (finding that it is permissible for judges to exercise discretion in imposing a sentence within the range prescribed by statute, "taking into consideration various factors relating both to offense and offender").

The majority contends that general deterrence—i.e., sending a message to the community, is a proper sentencing factor.

---

7. Charles's co-defendants received sentences of twenty-five years each.

8. Thirty years for racketeering, thirty years for conspiracy to commit racketeering, five years for possession of Ecstacy/MDMA, and eleven months and twenty-nine days for possession of marijuana, all counts to run consecutively.

However, this factor is not one of the enumerated factors in section 921.002(1), Florida Statutes (2014), and the Florida Supreme Court has adopted the strict view that the CPC expressly identifies those sentencing factors that a court may properly consider.

In *Norvil v. State*, 162 So.3d 3 (Fla. 4th DCA 2014) (en banc), all twelve members of this court held that, under the right circumstances, a court could take into consideration an arrest without conviction arising after the crime for which the defendant was to be sentenced. The Florida Supreme Court reversed that decision in *Norvil v. State*, 191 So.3d 406 (Fla.2016), holding the trial court violated a defendant's due process rights at sentencing by considering a subsequent arrest without conviction during sentencing for the primary offense.

One of the bases for reversal in *Norvil* was that the legislature did not enumerate subsequent arrests in the CPC as a valid sentencing consideration. The court explained what sentencing criteria could *properly* be considered by trial judges:

> With regard to the sentencing criteria enunciated in chapter 921, along with its applicable definitions, *we conclude that the CPC is unambiguous concerning the factors a trial court may consider in sentencing a defendant.* The Legislature included prior arrests as information that is helpful in imposing the appropriate sentence for a defendant. § 921.231(1)(c), Fla. Stat. (2010). However, if the Legislature had intended to include subsequent arrests and their related charges as permissible sentencing factors, it would have done so.

*Id.* at 409 (emphasis added).

Significantly for this case, the CPC does *not* list (1) sending a message to the community or (2) deterring persons other than the defendant being sentenced as permissible sentencing factors.

Under the CPC, the "primary purpose of sentencing is to punish the offender." § 921.002(1)(b). Rehabilitation of the offender is another stated goal that is "subordinate to the goal of punishment." *Id.* However, trial judges should not consider *general* deterrence—when imposing an individual sentence for several reasons. First, the goal of general deterrence is already addressed by the sentencing scheme put in place by the Legislature. Second, the CPC does not include general deterrence in its "unambiguous" list of factors a trial court may consider in sentencing an individual defendant. § 921.231(1), Fla. Stat. (2014). If the Legislature had intended to include general deterrence as a permissible sentencing factor, "it would have done so." *Norvil*, 191 So.3d at 409. Third, it is fundamentally unfair to single out one defendant for especially harsh treatment in order to serve the utilitarian purpose of sending a message to the community. *See Beno v. State*, 581 N.E.2d 922, 924 (Ind.1991) (trial judge's desire to "send a message" to other drug dealers was not a proper reason to aggravate a sentence); *Commonwealth v. Howard*, 42 Mass.App.Ct. 322, 677 N.E.2d 233, 237 (1997) (a sentencing judge may not punish a defendant for any conduct other than that for which he stands convicted in a particular case). Fourth, when judges rely on factors not enumerated in the CPC to impose long sentences, they undermine the express legislative directive "to maximize the finite capacities of state and local correctional facilities." § 921.002(1)(i). Finally, and particularly relevant in this case, experts dispute whether lengthy sentences have any deterrent effect whatsoever on a defendant's fellow gang members. *E.g., United States v. Presley*, 790 F.3d 699, 701

(7th Cir.2015).[9]

For all of these reasons, where a trial court imposes a sentence on an individual defendant with the intent to "send a message" to the community, the sentence rests on an impermissible sentencing consideration.

Because the record in this case reflects that the trial court may have relied on an impermissible consideration, the state bore the burden of demonstrating that the improper consideration "played no part in the sentence imposed." *Epprecht v. State*, 488 So.2d 129, 131 (Fla. 3d DCA 1986). The totality of the circumstances—the defendant's two-year cooperation with law enforcement, the original plea offers, the sentences of the co-defendants, the defendant's acquittal of multiple firearms charges, the improper sentencing factor urged by the state, and the judge's silence—gave rise to a presumption that the sentence rested on impermissible considerations. Here, the state did not meet its burden to overcome the presumption.

The majority points to cases where general deterrence is a proper aim of punishment. However, sentencing law has recently undergone a sea change and many sentencing shibboleths have run aground on the shoals of the Constitution. For example, a defendant's lack of remorse for having committed a crime was long thought to be "the type of factor that judges have historically taken into consideration in imposing sentence." *St. Val v. State*, 958 So.2d 1146, 1146–47 (Fla. 4th DCA 2007). Now, a defendant cannot be punished for a lack of remorse if that factor impinges on the right against self-incrimination. *See Robinson v. State*, 108 So.3d 1150, 1151 (Fla. 5th DCA 2013); *Green v. State*, 84 So.3d 1169, 1171–72 (Fla. 3d DCA 2012). Similarly, although restitution for victims of crime is a goal of the criminal law, a court violates the due process clause if it fashions a sentence that incentivizes restitution which a defendant is unable to pay. *Noel v. State*, 191 So.3d 370 (Fla.2016). As previously noted, *Norvil* buried yet another sentencing consideration previously thought to be acceptable. General deterrence is merely another in this line of sentencing factors waiting for elimination.

The trial judge sat through a two-week trial and may well have sentenced Charles based on lawful considerations. However, the judge was silent as to the reasons supporting the sentence. A judicial silence often masks constitutional violations in sentencing. *See Alfonso–Roche v. State*, 199 So.3d 941 (Fla. 4th DCA 2016) (Gross, J., concurring). While it is not required by the criminal rules, the American Bar Association recommends that sentencing courts "always provide an explanation of the court's reasons sufficient to inform the parties, appellate courts, and the public of the basis for the sentence." ABA STANDARDS FOR CRIMINAL JUSTICE: IMPOSITION OF SENTENCE § 18–5.19.[10] The state did not

9. In *Presley,* Judge Richard Posner points out that criminals engaged in dangerous activities are generally undeterred by the length of a possible sentence. *Id.* (citing A. Mitchell Polinsky & Steven Shavell, *On the Disutility and Discounting of Imprisonment and the Theory of Deterrence*, 28 J. LEGAL STUD. 1, 4–6 (1999); and Paul H. Robinson & John M. Darley, *The Role of Deterrence in the Formulation of Criminal Law Rules: At Its Worst When Doing Its Best*, 91 GEO. L.J. 949, 95455 (2003)); *see also*

Katelyn Carr, Comment, *An Argument Against Using General Deterrence as a Factor in Criminal Sentencing*, 44 CUMB. L.REV. 249, 261 (2014) (dispelling the deterrence rationale for crimes instigated by street gangs).

10. The Commentary cites Marvin E. Frankel, CRIMINAL SENTENCES: LAW WITHOUT ORDER 39 (1973) ("The question 'Why?' states a primitive and insistent human need. The small child, punished or deprived, demands an explanation. The existence of a rationale may

overcome the presumption that the sentence was based on impermissible factors.

Because the totality of the circumstances suggests that the judge imposed the harshest sentence possible within the statutory range as a result of her consideration of an impermissible sentencing factor, and because the state failed to demonstrate that the sentence was based on properly-considered factors, this case should be reversed.

not make the hurt pleasant, or even just. But the absence, or refusal, of reasons is a hallmark of injustice.... The despot is not bound by rules. He need not account for what he does. Criminal sentences, as our judges commonly pronounce them, are in these vital aspects tyrannical.'').