DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

SHAUN WYRICH,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D22-1458
_____

September 1, 2023

Appeal from the Circuit Court for Pasco County; Mary M. Handsel,
Judge.

J. Andrew Crawford of J. Andrew Crawford, P.A., St. Petersburg, for
Appellant.

Ashley Moody, Attorney General, Tallahassee, and Sonia C. Lawson,
Assistant Attorney General, Tampa, for Appellee.


SMITH, Judge.

Shaun Wyrich appeals the sentence rendered on April 7, 2022.  Mr.
Wyrich was sentenced to fifteen years in prison with a four-year
minimum mandatory for leaving the scene of a crash involving death
without rendering aid in violation of section 316.027(2)(c), Florida
Statutes (2020).  He was also sentenced to time served for driving a

motorcycle without a driver license in violation of section 322.57(1)(g), Florida Statutes (2020).  Because the sentencing judge referenced uncharged conduct during sentencing and the State failed to prove that the trial court did not rely upon that uncharged conduct, we reverse and remand for a new sentencing hearing before a different judge.

**I**

On the evening of December 5, 2020, Mr. Wyrich was on his way home from work, traveling at a high rate of speed on his motorcycle, when he crossed a solid double line in order to pass another vehicle and struck a seven-year-old child.  The child later died from the sustained injuries.  Mr. Wyrich left the scene but turned himself in to law enforcement the following day.

At the sentencing hearing, Mr. Wyrich, who was nineteen at the time of the incident, entered an open plea of guilty, and requested a youthful offender downward departure sentence—six months of county jail followed by five and one-half years of probation during which Mr. Wyrich would receive mental health treatment.  The sentencing judge heard witness testimony and statement letters from Mr. Wyrich and his family, as well as from the child victim's family.  In support of the downward departure, Mr. Wyrich's counsel argued that Mr. Wyrich had voluntarily turned himself in, was remorseful for the pain and suffering caused, and had turned his life around since the crash.

A presentence investigation (PSI) was prepared and submitted to the sentencing judge.  The PSI included a prior criminal case in which Mr. Wyrich received a twenty-four-month probation sentence after entering a negotiated plea of guilty to two felony drug sales committed on August 20, 2020.  The PSI also included facts related to uncharged conduct that occurred on the morning before the crash, namely Mr.

2

Wyrich's presence at his residence when his roommate returned fire after another individual fired gunshots into their residence and Mr. Wyrich's disposal of the roommate's gun used in the incident. Pursuant to the PSI, Mr. Wyrich's lowest permissible sentence under the Criminal Punishment Code was 124.8 months in prison, but he could be sentenced to up to thirty years with a four-year minimum mandatory sentence if he was not sentenced as a youthful offender. The victim's mother requested that Mr. Wyrich receive twenty years in state prison with a four-year minimum mandatory, and the State agreed with the request.

In opposing the request for a downward departure, the State argued that Mr. Wyrich was on pretrial release for the prior drug offenses referenced in the PSI at the time of the crash. Further, the State elaborated on the uncharged conduct, stating that this information should be allowed "so that the [c]ourt has a better understanding of who this defendant is." Unfamiliar with the uncharged conduct, the sentencing judge indicated that she would hear from the State regarding that conduct. Without objection, the State provided the sentencing judge with a copy of the police report regarding the uncharged shooting incident. The report alleged that marijuana was found in the residence and that Mr. Wyrich disposed of the gun involved in the gunfire. The State also brought up an out-of-court statement from another individual, who alleged that at the time of the accident Mr. Wyrich was on his way to dispose of the gun. The State argued that both the uncharged conduct and the instant case involved the concealment and destruction of evidence. During the presentation of the State's evidence, the judge was engaged in the State's presentation of the uncharged conduct, summarizing and commenting on the evidence. Ultimately, the State

requested that the court sentence Mr. Wyrich to twenty years' imprisonment with a four-year minimum mandatory.

At the conclusion of the sentencing hearing, the court adjudicated Mr. Wyrich guilty on both counts. Mr. Wyrich was sentenced to time served for driving a motorcycle without a license, a misdemeanor. Regarding leaving the scene of a crash involving death without rendering aid, the court stated: "Although you qualify for the youthful offender departure, I am choosing not to exercise my discretion. I'm going to sentence you to 15 years in the Department of Corrections with a four year minimum mandatory." The court went on to explain:

> All right. Sir, I want to say a couple of things on the record. Number one, in this particular case the probable cause affidavit in this state and you have entered a plea to it that you were driving almost 64 miles an hour in a 30 mile an hour residential zone. That you overtook another vehicle on a double yellow line. You were on a motorcycle. Obviously, you were driving recklessly. There's no other choice about that.
>
> You hit a small child. You had to know that you hit a small child. Unlike an SUV or a car or something like that where you might not have seen him. You had to look him in the face in the back when you hit him.
>
> Now, granted I understand that must have weighed on you and that's why you turned yourself in. But you had an opportunity to stop and assist and I know there was other people but you had to know when you hit him that he was a little kid. You had to know. I'm not saying you didn't panic. But there's times in our life with all the things that were going on in your life, you were selling drugs, <u>you were hanging around with drug dealers, they're shooting up the car, they shooting up the house, you're throwing the gun in the—you were living a bad life</u> and I'm glad to know that you've turned your life around.

(Emphasis added.)

4

Mr. Wyrich's counsel concedes that no objection was made to the uncharged conduct and argues that the error here was fundamental.[1]

## II

Defendants are afforded no constitutional due process right to correct unpreserved errors. *Smith v. State*, 320 So. 3d 20, 27 (Fla. 2021) (citing *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970)); *see also Charles v. State*, 204 So. 3d 63, 66 (Fla 4th DCA 2016) (stating that sentences within statutory limits are generally not subject to appellate review (quoting *Howard v. State*, 820 So. 2d 337, 339 (Fla. 4th DCA 2002))). The Florida Supreme Court has repeatedly cautioned that "appellate courts should 'exercise . . . discretion under the doctrine of fundamental error very guardedly.' " *Smith*, 320 So. 3d at 27 (quoting *Sanford*, 237 So. 2d at 137); *see also State v. Garcia*, 346 So. 3d 581, 585-86 (Fla. 2022) (holding that there was no fundamental error where sentencing court issued sentence within statutory range after considering improper evidence). For an unpreserved error to be so fundamental as to warrant reversal, "the error must be basic to the judicial decision under review and equivalent to a denial of due process." *Hannum v. State*, 13 So. 3d 132, 135 (Fla. 2d DCA 2009) (quoting *Hopkins v. State*, 632 So. 2d 1372, 1374 (Fla. 1994)).

A subsequent arrest or charge is not a proper factor for the sentencing judge to consider under Florida's Criminal Punishment Code. *See Norvil v. State*, 191 So. 3d 406, 409 (Fla. 2016) (relying upon the clear definitions in sections 921.231(1)(c) and 921.0021(5), Florida Statutes (2010), which reference "primary offense" and "prior record" as

---

[1] In responding to the uncharged conduct, Mr. Wyrich's counsel did, however, apprise the sentencing judge that Mr. Wyrich was a "victim" and had not been charged with any crimes for that conduct.

required information included in a presentencing investigation report for consideration by the sentencing judge—and not subsequent arrest or record).[2] "[C]onsideration of an improper factor such as uncharged offenses goes to the heart of the sentencing process, [and thus] the error is fundamental." *Challis v. State*, 157 So. 3d 393, 396-97 (Fla. 2d DCA 2015) (granting petition alleging ineffective assistance of appellate counsel where sentencing court speculated that defendant probably caused ten to twenty deaths from his drug trafficking); *see also Hernandez v. State*, 145 So. 3d 902, 904-05 (Fla. 2d DCA 2014) (reversing increased sentence where sentencing judge heard information about impending charges).

However, the mere fact that a sentencing judge hears improper information related to uncharged conduct during a sentencing hearing does not necessarily warrant reversal. *See Serrano v. State*, 279 So. 3d 296, 302 (Fla. 1st DCA 2019) ("While a court's consideration of constitutionally impermissible factors generally rises to the level of fundamental error, there must be some indication that the court based its sentence on an impermissible factor before this Court will reverse." (citing *Barlow v. State*, 238 So. 3d 416, 417 (Fla. 1st DCA 2018))). We recognize that while trial judges may hear improper information from time to time during sentencing hearings, trial judges must act within the bounds of the law and neither consider nor act upon that improper information. *Cf. Mercado v. State*, 353 So. 3d 1257, 1260 (Fla. 2d DCA 2023) (stating the record reflected "no inkling that the trial court relied upon impermissible factors"); *N.D.W. v. State*, 235 So. 3d 1001, 1002

---

[2] " 'Prior record' means a conviction for a crime committed by the offender, as an adult or a juvenile, prior to the time of the primary offense." § 921.0021(5), Fla. Stat. (2022).

6

(Fla. 2d DCA 2017) (reversing juvenile disposition order where trial court overruled defense counsel's objections to references to pending charges and sentenced defendant consistent with State's recommendation). Where the record " 'may reasonably be read to suggest' that a defendant's sentence was the result, at least in part, of the consideration of impermissible factors," reversal is required. *Love v. State*, 235 So. 3d 1037, 1040 (Fla. 2d DCA 2018) (quoting *Mosley v. State*, 198 So. 3d 58, 60 (Fla. 2d DCA 2015)); *see also Norvil*, 191 So. 3d at 410 (holding that consideration of a subsequent arrest without conviction at sentencing results in fundamental error).

### III

On this record, the State bears the burden to show that the sentencing judge did not rely upon the uncharged conduct. *See Love*, 235 So. 3d at 1039, 1040 n.1 ("We cannot say that the trial court did not consider [the uncharged conduct presented by the State] in imposing sentence."); *see also Fernandez v. State*, 212 So. 3d 494, 496-97 (Fla. 2d DCA 2017) (holding that the State failed to carry its burden where sentencing court specifically referred to the new offense during sentencing). Here, the State first relies upon *Mercado* to argue that the sentencing judge "focused exclusively on the facts of the crime" when rendering its sentence. We do not find merit in this argument. In *Mercado*, as in this case, the State presented evidence of uncharged incidents; Mr. Mercado allegedly threatened through text messages to shoot and kill his former partner's father. 353 So. 3d at 1258. Also as in this case, the State in *Mercado* advised the sentencing judge that the investigation into the texts was still ongoing. *Id.* The similarities between *Mercado* and this case end there. Contrary to the facts in *Mercado*, the sentencing judge in this case addressed the uncharged

7

conduct when explaining the reason for Mr. Wyrich's sentence.[3]  And so the State in this case cannot show that the sentencing judge "focused exclusively on the facts of the crime" when rendering the sentence.

The State next argues that the court's reference to the uncharged conduct during Mr. Wyrich's sentencing was simply a justification for why the court refused to honor Mr. Wyrich's request for a downward departure.  *Cf. Godwin v. State*, 160 So. 3d 497, 498 (Fla. 2d DCA 2015) (holding that trial court may consider remorse when deciding whether to mitigate sentence); *Shelton v. State*, 59 So. 3d 248, 250 (Fla. 4th DCA 2011) (holding that trial court permissibly commented on defendant's lack of remorse to explain why it lacked the ability to mitigate the sentence).  We also reject this argument.  Neither the State nor the sentencing judge questioned Mr. Wyrich's lack of remorse.  The State presented the uncharged conduct, in its own words, "so that the [c]ourt has a better understanding of who this defendant is."  The court referenced marijuana found in Mr. Wyrich's residence on the day his roommate returned gunfire after shots were fired into their residence and also referenced Mr. Wyrich's disposal of the gun involved in the shooting—leading the sentencing judge to the conclusion that Mr. Wyrich was "living a bad life."  The evidence presented led to the exact result that the State intended.  For these reasons, we hold that the State failed to carry its burden of proof showing that the fifteen-year sentence here was not based upon the sentencing judge's consideration of the

---

[3] The sentencing judge in this case also agreed to hear the evidence of the uncharged conduct and was engaged when that evidence was being offered and argued.  Our opinion does not rest upon these additional facts, but we mention them to caution trial courts from commenting on impermissible sentencing factors, such as uncharged conduct, if they should be presented—even without objection.

uncharged conduct. *See Love*, 235 So. 3d at 1040 (holding that while the sentencing judge made no specific mention of the uncharged offenses presented by the State, the State failed to meet its burden of proof of showing that the court relied on impermissible factors in imposing the sentence).

## IV

Accordingly, because the error here was fundamental and because the State failed to meet its burden of proof that the fifteen-year sentence was not based upon consideration of the uncharged conduct, we reverse the fifteen-year sentence and remand for a new sentencing hearing before a different judge. *See id.; Fernandez*, 212 So. 3d at 497; *Gray v. State*, 964 So. 2d 884, 885 (Fla. 2d DCA 2007).

Reversed and remanded.

VILLANTI and BLACK, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.